```
                      UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF VERMONT
In Re:                                :
                                      :
PETER J. WISELL II,                   :
     Debtor.                          :
_____:
                                      :
PETER J. WISELL II,                   :
     Appellant,                       :
                                      :
     v.                               :     No. 2:06-cv-167-wks
                                      :
AILEEN WISELL, et al.,                :
     Appellee.                        :
```

## MEMORANDUM AND ORDER

Peter James Wisell II ("Debtor") appeals a final order of the United States Bankruptcy Court for the District of Vermont ("Bankruptcy Court") denying him a discharge of his debts under 11 U.S.C. § 727(a)(4)(A), entered on June 30, 2006.  The Appellees are Aileen Wisell, the Debtor's ex-wife, and Douglas Wolinsky, in his capacity as Trustee for Peter Wisell's bankruptcy estate.  For the reasons set forth below, the Court AFFIRMS the judgment of the Bankruptcy Court.

### I.  FACTS

In April of 2003, Peter and Aileen Wisell completed a highly contentious divorce.  On September 16, 2004, the Debtor filed a petition and schedules for chapter 7 bankruptcy.  In August of 2005, Aileen Wisell initiated the present adversary proceeding objecting to his discharge.  The Bankruptcy Court heard testimony

and accepted evidence in this matter on May 17, 2006.

It is undisputed that the Debtor's petition contained factual inaccuracies.  The Debtor stated on his Schedule I that he was "unemployed" and "currently looking for employment" as of the petition date.  He testified that he learned one day before the Petition Date, on September 15, 2004, that he would be losing his job with Redstone Commercial Group, Inc. ("Redstone") effective September 17, 2004, and would receive a two week severance payment.  As of the Petition Date, September 16, 2004, he was still employed by Redstone, as his employment did not terminate until one day later.  On September 23, 2004, Redstone paid the Debtor his full bi-weekly salary in the gross amount of $1,730.77 for the period from September 10, 2004, to September 23, 2004.  He also received two other checks on the same date.  One was in the amount of $2,596.16, with the notation "sevrnce" [sic], and the other in the amount of $2,076.96, with the notation "vacation."  The Debtor's Schedules did not disclose expected severance pay, vacation pay, or additional salary from Redstone.  About one year after the Petition Date, he amended the Schedules to reflect those amounts.  He did not ever amend the statement on Schedule I that he was unemployed as of the Petition Date.  The Debtor also incorrectly valued certain property (rifles, a shotgun and pistol listed on his schedules).

When he learned that he was losing his job at Redstone, the

Debtor contacted a friend at another firm, Pizzagalli Construction, on September 15, 2004.  He emailed his resume to Pizzagalli on September 19, 2004, from his Redstone email account.  He did not have remote access to this account, but testified positively that he did not enter Redstone after September 17, 2004.  This inconsistency contributed to the Bankruptcy Court's conclusion that his testimony regarding his last day of work was not credible.  The Debtor began work with Pizzagalli in early October of 2004.  His salary with Pizzagalli exceeded his former salary with Redstone.

   The Debtor testified that he had discussed how to represent his employment status on the Petition with his attorney, Gleb Glinka, and that Attorney Glinka had told him that it was irrelevant that he would be employed for one more day.  Attorney Glinka testified, "I may have been under the impression that he had already stopped working, or he may have said, you know, I'll still be working one more day, and it just went past me in the, you know, in the haste, in this last minute haste."  Tr. 67:7-11 (G. Glinka, May 17, 2006).  When asked whether it would surprise him if he had advised the Debtor "to indicate that he was unemployed with zero income if he did, in fact, have one more day of unemployment," he answered, "It would . . . I mean what I would normally do since there is absolutely no point in fooling around with that, is you know, indicate as much somewhere.

Instead of saying debtor is looking for work, I would have said debtor will be work-looking for work as of, you know, tomorrow." Id. at 67:13-21.  He couldn't recall if the Debtor had told him that he was expecting severance pay, but testified that if he had been told he would have listed it "for sure." Id. at 76:25-77:5.

The Bankruptcy Court found that the plaintiff had met her burden and denied the discharge.  Specifically, the Bankruptcy Court found that "the Debtor's failure to disclose his actual employment status as of the Petition Date constitutes a knowing and fraudulent failure to disclose a fact that is material to the Debtor's bankruptcy case."  Memo. of Decision 5 (June 29, 2006).

**II.  Discussion**

A district court should review the Bankruptcy Court's findings of fact for clear error, In re United States Lines, Inc. v. American Steamship Owners, 197 F.3d 631, 640-41 (2d Cir. 1999), giving "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.  Conclusions of law, and mixed questions of law and fact, are reviewed de novo.  U.S. Lines, Inc., 197 F.3d at 640-41.  "The question of a debtor's knowledge and intent under § 727(a)(4) is a matter of fact" while "the issue of materiality is best characterized as a mixed one of law and fact."  In re Sears, 246 B.R. 341, 347 (BAP 8th Cir. 2000) (internal citations omitted).

Section 727(a)(4)(A) provides that a court shall grant a debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. A debtor's petition and schedules constitute a statement under oath for purposes of this section. In re Gannon, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994). In order to prevail under this section, the party objecting to discharge must establish by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive, and (5) the statement related materially to the bankruptcy case. In re Arbaney, 345 B.R. 293, 309 (Bankr. D. Colo. 2006). The burden of proving these elements is on the plaintiff. In re Shebel, 54 B.R. 199, 202 (Bankr. D. Vt. 1985). Once the plaintiff meets its initial burden to produce evidence of a false statement, the burden of production shifts to the debtor to produce a "credible explanation." In re Brenes, 261 B.R. 322, 334 (Bankr. D. Conn. 2001). The burden of proof, in the sense of the risk of non-persuasion, remains consistently with the plaintiff. Arbaney, 345 B.R. at 301.

In this case, the central issues are whether the statement that the Debtor was unemployed was made with the intent to deceive, and whether it related materially to the Debtor's case. It is undisputed that the statement was made under oath, that the

statement was false, and that the Debtor was aware that the statement was false.

The Bankruptcy Court found that the Debtor made the inaccurate statement regarding his employment with the intent to deceive.  As it regards a question of fact, this determination is reviewed for clear error, with due regard granted to the Bankruptcy Court's opportunity to judge the credibility of the Debtor and other witnesses.  See U.S. Lines, Inc., 197 F.3d at 640-41.  A court may find intent to deceive in a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering" but not in mere ignorance or carelessness.  In re Ptasinski, 290 B.R. 16, 22-23 (Bankr.W.D.N.Y. 2003) (citing Diorio v. Kreisler-Borg Constr. Co., 407 F.2d 1330 (2d Cir. 1969) and Bank of Miami v. Espino (In re Espino), 806 F.2d 1001 (11th Cir. 1986)).  The required intent may be found by inference from all of the facts. Id. (citing 6 L. King, Collier on Bankruptcy, ¶ 727.04[1][a] at 37 (15th ed. rev. 1996)).  The Bankruptcy Court cited the Debtor's failure to amend his schedules to reflect his employment as of the Petition Date, and his "numerous misstatements on his schedules" as evidence of his intent to deceive.

Wisell argues that the Bankruptcy Court erred in finding that he failed to produce evidence of a credible explanation for misstatements in the Schedules. He did advance an explanation for

the misstatements, claiming that he had completed the Schedules in good faith and according to the advice of his counsel. This explanation, if true, would be probably indicate that the false statement was not knowingly and fraudulently made. See In re Ptasinski, 290 B.R. 16, 23 (Bkrtcy. W.D.N.Y. 2003) ("[I]f items were omitted from the debtor's schedules because of an honest mistake or upon the honest advice of counsel, such a false declaration may not be sufficiently knowingly and fraudulently made so as to result in a denial of discharge."). However, Wisell's counsel was unable to corroborate his account; he stated that he did not recall whether or not the Debtor had told him that his unemployment would not take effect until the day after the Petition Date, but testified that he didn't believe that he would have recommended representing that the Debtor was unemployed if he had been aware of that fact. In addition, the Bankruptcy Court found that the Debtor's testimony was not credible regarding the dates of his employment. Since the Debtor asserts that his last day of work was September 17, 2004 but was paid through September 23, 2004 and was sending emails from his company account at Redstone as late as September 19, 2004, there is ample evidence for the Bankruptcy Court's conclusion regarding his credibility.

Wisell additionally argues that the inaccurate statement on his petition that he was unemployed did not relate materially to

his bankruptcy case.  "The issue of materiality is best characterized as a mixed one of law and fact." Sears, 246 B.R. at 347 (internal citations omitted).  Therefore, this Court reviews the Bankruptcy Court's determination on this point *de novo*.

A statement is material if it is pertinent to the discovery of assets.  In re Mick, 310 B.R. 255, 261 (D. Vt. 2004) (citing In re Brenes, 261 B.R. at 334).  A matter "bearing a relationship to the debtor's business transactions or estate or which leads to the discovery of assets, business dealings, or existence or disposition of property" is material.  Id. (citing In re Sawyer, 130 B.R. 384, 394 (Bankr. E.D.N.Y. 1991).  It is nearly inarguable that employment status is ordinarily a material fact in a bankruptcy proceeding, as it is certainly pertinent to the discovery of assets.

The Debtor contends that because his employment was scheduled to terminate the day after the Petition Date, the misstatement was not material within the facts of this particular case. He claims that "[m]ateriality . . . must involve some detrimental effect on creditors or benefit to the debtor." (Br. of the Appellant 16.)  This is not always the case; the test is whether the false statement is pertinent to the discovery of assets, not whether the omitted information would have lead to the location of assets or whether creditors were harmed.  In re

Shah, 169 B.R. 17 (Bkrtcy. E.D.N.Y. 1994) (citing In re Robinson, 506 F.2d 1184, 1188 (2d Cir. 1974)).  In this case, accurate information regarding the Debtor's employment status was pertinent to the discovery of assets such as severance pay and the pay that the Debtor received for work through September 23, 2004, five days after his purported last day of work.  Therefore, even in the circumstances of this case, the inaccurate statement about the Debtor's employment was material.

### III.  CONCLUSION

For the foregoing reasons, the judgment of the Bankruptcy Court is AFFIRMED.


Dated at Burlington, Vermont this 28th day of August, 2007.


        /s/ William K. Sessions III
        William K. Sessions III
        Chief Judge